## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TERRANCE JOHNSON,**
    **Plaintiff**

**CIVIL ACTION**

**VERSUS**

**NO.  18-11900**

**MARLIN GUSMAN, ET AL.,**
    **Defendant**

**SECTION: "E" (3)**

## ORDER AND REASONS

Before the Court is a Motion for Partial Judgment on the Pleadings Pursuant to Rule 12(c) filed by Defendants Sheriff Marlin N. Gusman and Major Nicole Harris.[1] Plaintiff Terrance Johnson opposes this motion.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND[3]

On November 30, 2017, Plaintiff was a pretrial detainee, in the custody of the Orleans Parish Sheriff's Office ("OPSO") in the Orleans Justice Center Jail ("OJC") located in New Orleans, Louisiana, awaiting trial on state charges.[4] According to Plaintiff, an unidentified employee, "Jane Doe," was the only official monitoring the inmates.[5] Jane Doe left her post for several minutes, during which time the cell doors were left unlocked.[6] Plaintiff alleges that during this time, with no guards monitoring Plaintiff's cell, several

---

[1] R. Doc. 25.
[2] R. Doc. 28.
[3] The facts recited herein are as alleged in Plaintiff's Complaint, R. Doc. 1.
[4] R. Doc. 1 at ¶ 1.
[5] *Id.* at ¶ 13.
[6] *Id.*

inmates entered Plaintiff's cell and stabbed Plaintiff in the eye with a contraband weapon.[7] As a result of the assault, Plaintiff's eye had to be surgically removed.[8]

On November 29, 2018, Plaintiff filed the instant lawsuit against defendants Sheriff Marlin Gusman, Major Nicole Harris, and Compliance Director Gary Maynard.[9] Plaintiff also brought claims against two unidentified employees, Jane Doe, the Orleans Parish Sheriff's Deputy who left her post shortly before Plaintiff was attacked, and "John Doe," Jane Doe's immediate supervisor.[10] Plaintiff subsequently voluntarily dismissed his claims against Gary Maynard.[11] John Doe and Jane Doe remain Defendants but have not been identified. The deadline to file amendments to pleadings has passed.[12]

Sheriff Gusman and Major Harris (collectively, "Defendants") are the elected sheriff of Orleans Parish and the warden of the OJC, respectively.[13] With respect to Sheriff Gusman, Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1983, alleging Gusman "deprived plaintiff of his Constitutional Rights, specifically but not limited to his 14th Amendment right to due process and his 8th Amendment right to be free from cruel and unusual punishment,"[14] by failing to "properly supervise and train Orleans Parish Sheriff's Office employees in inmate protection and contraband control," "maintain[] a Constitutionally []adequate number of prison guards on staff," and "implement and enforce adequate policies and procedures to protect inmates."[15] Plaintiff brings his § 1983

---

[7] *Id.* at ¶ 14.
[8] *Id.*
[9] R. Doc. 1.
[10] *Id.* at ¶ 15.
[11] R. Doc. 11.
[12] R. Doc. 16 at 8 (providing amendments to pleadings were due October 28, 2019).
[13] R. Doc. 1 at ¶¶ 2, 4.
[14] *Id.* at ¶ 28.
[15] *Id.* at ¶ 18.

claims against Sheriff Gusman in his personal capacity and his official capacity as Sheriff of Orleans Parish and head of the Orleans Parish Sheriff's Office."[16]

Plaintiff also brings a claim against Sheriff Gusman under Louisiana Code of Civil Procedure Article 2315.[17] Plaintiff alleges Gusman is liable for Jane Doe's and John Doe's negligence as their employer through "Louisiana's the doctrine of *respondeat superior*."[18]

With respect to Major Harris, Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1983, alleging Harris "deprived plaintiff of his Constitutional Rights, specifically but not limited to his 14th Amendment right to due process and his 8th Amendment right to be free from cruel and unusual punishment,"[19] by "fail[ing] to adequately train employees in Constitutionally adequate procedures for the protection of inmates,"[20] "fail[ing] to properly staff the block of the jail housing plaintiff[,] and further fail[ing] to adequately supervise and train Jane Doe in matters of inmate safety and supervision."[21] Plaintiff brings his § 1983 claim against Major Harris in her individual capacity; he does not bring a § 1983 claim against Major Harris in her official capacity.[22] Plaintiff also brings a claim against Major Harris under Louisiana Code of Civil Procedure Article 2315. [23] Plaintiff alleges Gusman is liable for Jane Doe's and John Doe's negligence as their employer through "Louisiana's the doctrine of *respondeat superior*."[24]

---

[16] *Id.* at ¶¶ 2, 18, 19, 21, 23. *See also* R. Doc. 20 at 1 (Plaintiff's letter to the Court regarding his causes of action) (clarifying Plaintiff brings § 1983 claims against Sheriff Gusman "in his personal capacity and his official capacity as Sheriff of Orleans Parish and head of the Orleans Parish Sheriff's Office.").
[17] R. Doc. 1 at ¶ 29.
[18] *Id.*
[19] *Id.* at ¶ 28.
[20] R. Doc. 1 at ¶ 20.
[21] *Id.* at ¶ 21.
[22] *Id.* at ¶¶ 21-23. *See also* R. Doc. 20 at 1 (clarifying Plaintiff brings his § 1983 claim against Major Harris "in her personal capacity.").
[23] R. Doc. 1 at ¶ 29.
[24] *Id.*

On January 3, 2020, Defendants filed the instant motion for partial judgment on the pleadings, seeking dismissal of the federal claims against them.[25] Defendants argue Plaintiff's § 1983 claim against Sheriff Gusman in his official capacity fails because Sheriff Gusman was not the "final policymaker" of OPSO on the date of the alleged incident.[26] Defendants further argue Plaintiff cannot establish Defendants are liable in their individual capacities because the Sheriff is not the final policymaker for OPSO and because Defendants did not have knowledge of a substantial risk to inmate safety.[27] Finally, Defendants argue they are entitled to qualified immunity as to Plaintiff's claims against Defendants in their individual capacities because Sheriff Gusman was not the final decisionmaker for OPSO and because Defendants' conduct was not objectively unreasonable.[28] Defendants expressly provide they "do not address the state law negligence claims in the plaintiff's Petition" in the instant motion for judgment on the pleadings.[29]

## LEGAL STANDARD

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[30] "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[31] The standard for addressing a Rule 12(c) motion is the same as that used for deciding motions to dismiss pursuant to Rule 12(b)(6).[32] As a result,

---

[25] R. Doc. 25-1 at 6.
[26] *Id*. at 7.
[27] *Id*.
[28] *Id*. at 18.
[29] *Id*. at 6.
[30] Fed. R. Civ. P. 12(c).
[31] *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam).
[32] *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209–10 (5th Cir. 2010).

in deciding a Rule 12(c) motion, "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[33] "The [district] court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[34] "In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[35] The Court will not, however, "accept as true conclusory allegations or unwarranted deductions of fact."[36]

## LAW AND ANALYSIS

### I.   Defendants are not Entitled to Judgment on the Pleadings with Respect to Plaintiff's § 1983 Claim Against Sheriff Gusman in His Official Capacity

Plaintiff brings a § 1983 claim against Sheriff Gusman in his official capacity. Official capacity claims are governed by the municipal liability principles derived from *Monell v. New York City Department of Social Services* and its progeny.[37] Pursuant to *Monell*, a suit against a public official in his official capacity "is not a suit against the official personally."[38] Rather, such a suit is "to be treated as a suit against the entity," to wit, the office the officials holds.[39] Indeed, a government entity cannot be liable for the actions of its employees under the theory of *respondeat superior*,[40] and, the only immunity defenses available to a defendant sued in his official capacity are those that

---

[33] *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

[34] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)).

[35] *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).

[36] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

[37] 436 U.S. 358 (1978).

[38] *Id.*

[39] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[40] *Glotfelty v. Karas*, 512 F. App'x. 409, 417 (5th Cir. 2013).

could be asserted by the entity he represents.[41] As a result, Plaintiff's claim against Sheriff Gusman in his official capacity is treated as a claim against the local governing entity the Sheriff serves, the OPSO.[42]

To succeed on a *Monell* claim, a plaintiff must establish three elements: (1) an official policy or custom (2) of which a policymaker can be charged with actual or constructive knowledge (3) and that the plaintiff suffered a violation of constitutional rights whose "moving force" is the policy or custom.[43] To prove the existence of a policy, a plaintiff must point to an official policy made by a municipal official "'with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'"[44] Under the second prong, the policymaker must have "final authority to establish municipal policy with respect to the action ordered."[45]

Defendants do not argue Plaintiff has not sufficiently alleged the first and third *Monell* prongs. Rather, Defendants' base their request to dismiss Plaintiff's § 1983 claim against the Sheriff in his official capacity solely on the argument that Sheriff Gusman did not have final policymaking authority at OPSO.[46] As a result, only the second *Monell* prong is at issue in this motion. With respect to Sheriff Gusman's authority to establish municipal policy, Plaintiff alleges Sheriff Gusman "is and was at all times pertinent the elected sheriff of Orleans Parish in the State of Louisiana, and he is the chief law enforcement officer and head of the Orleans Parish Sheriff's Office";[47] "[h]e has overall

---

[41] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[42] *Victoria W. v. Larpenter*, 205 F. supp. 2d 580, 586 n.16 (E.D. La. May 21, 2002) (suit against a Louisiana sheriff in his official capacity "is the equivalent of a suit against the office he holds.").

[43] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[44] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468–70 (5th Cir. 1999) (quoting *McMillian*, 520 U.S. 781, 784–85 (1997)).

[45] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citation omitted).

[46] R. Doc. 25-1 at 10-12.

[47] R. Doc. 1 at ¶ 2.

responsibility for the policies, procedures, operations, and supervision of the Orleans Parish Sheriff's Office and its employees, and he has custody and control over the Orleans Justice Center Jail";[48] "[h]e is a resident of full age and majority of the Eastern District of Louisiana";[49]  and he "had at all times pertinent the ultimate hiring, firing, and policy-making authority in the Orleans Parish Prison."[50]

"[S]tate law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity."[51] "The final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees."[52] Under Louisiana law, "[e]ach sheriff shall be keeper of the public jail of his parish."[53] As a result, under Louisiana law, a sheriff is considered the final policymaker of the public prisons of his parish. Indeed, "the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office."[54] Accordingly, to survive a motion to dismiss a municipal liability claim for constitutional violations committed by a parish prison, a plaintiff must, as a threshold matter, bring suit against the sheriff.[55] In this case, Plaintiff has appropriately brought suit against Sheriff Gusman, the sheriff of the parish in which OJC is located, and has alleged Sheriff Gusman had final authority to establish

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at ¶ 7.

[51] *Causey v. Par. of Tangipahoa*, 167 F. Supp. 2d 898, 907 (E.D. La. 2001) (quoting *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996)).

[52] *Lee v. Morial*, No. CIV. A. 99–2952, 2000 WL 726882, at *2 (E.D. La. June 2, 2000) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Jett v. Dallas Indep. School Dist.*, 7 F.3d 1241 (5th Cir. 1993)).

[53] La. R.S. 13:5539(C).

[54] *Causey*, 167 F. Supp. 2d at 907 (citing *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 614 (E.D. La. 1998)).

[55] *See id.* (dismissing official capacity claim brought against deputy sheriff because "the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff." (citing *Burge*, 187 F.3d at 470)).

municipal policy at OJC. Plaintiff's allegations are sufficient to survive Defendants' motion for judgment on the pleadings on this claim.

Because this may be a recurring theme, the Court further addresses the deficiencies in Defendants' argument that a § 1983 claim against the Sheriff cannot survive a motion to dismiss because the Sheriff does not have final policymaking authority at OPSO. Defendants contend cases against OPSO are atypical because a court order (the "Stipulated Order") expressly delegated final policymaking authority to a court-appointed official, the Compliance Director.[56] The Compliance Director's position was created by a Stipulated Order to bring OJC into compliance with a Consent Judgment entered in a case before Judge Africk, *Jones et al. v. Gusman*.[57] The Consent Judgment requires Sheriff Gusman to implement systemic and durable reforms to address pervasive and longstanding problems at the Orleans Parish jail facilities.[58] On June 21, 2016, all parties to the Consent Judgment and the presiding judge signed a Stipulated Order creating the Compliance Director's position.[59]

---

[56] Defendants separately contend the Compliance Director is a "court-ordered receiver" and "[c]ourts faced with receivership scenarios have dismissed municipalities from civil rights *Monell* claims as a matter of law." R. Doc. 28 at 7. Apparently, their argument is that, because the Compliance Director is a court-appointed receiver, he has final policymaking authority to the exclusion of the Sheriff. Because Plaintiff has dismissed his claims against Gary Maynard, the instant case is not one in which claims are brought against a court-appointed receiver in his official capacity. In any event, the two cases Defendants cite to support their position, *Canney v. City of Chelsea* and *Fantasia v. Office of Receiver of Commission on Mental Health Services*, are non-binding and easily distinguishable. In *Canney*, a decision from the District of Massachusetts, the plaintiff brought § 1983 claims against a receiver and *the receiver's staff* in their official capacities. 925 F. Supp 58, 69 (D. Mass. 1996). The *Canney* court held the receiver's staff members, who were appointed by the receiver, were protected from liability in their official capacities "under the language of the [Massachusetts] Receivership Act and Massachusetts decisional law concerning the personal liability of a receiver for actions performed within the scope of the receivership." *Id.* This case does not involve the Massachusetts Receivership Act or Massachusetts decisional law. Further, Sheriff Gusman was not appointed by the Compliance Director and is not a member of the Compliance Director's staff. In *Fantasia*, a decision from the District Court for the District of Columbia, the plaintiff did not bring any claims under § 1983. No. Civ. A. 01–1079–LFO, 2001 WL 34800013 at *1-2 (D.D.C. 2001). Further, the key issue in Fantasia was whether a receiver and other defendants were entitled to judicial immunity in their individual capacities. By contrast, the issue at hand is whether Sheriff Gusman constitutes a final policymaker such that liability can be imposed against him in his official capacity.

[57] *See* R. Doc. 466 filed in *Jones et al. v. Gusman*, Civil Action No. 12-859 (hereinafter "*Jones*").

[58] *Id.*

[59] *See* R. Doc. 1082 filed in *Jones*.

Defendants' argument, that the appointment of the Compliance Director means the Sheriff does not have final decision making authority and relieves the Sheriff's Office of responsibility, lacks merit for several reasons. First, "[t]he Stipulated Order is not state law; it is an order issued by a federal district court at the request of the parties in an action where plaintiffs alleged violations of their federal constitutional rights."[60] As the Supreme Court explained in *City of St. Louis v. Praprotnik*:

> We begin by reiterating that the identification of policymaking officials is a question of state law. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law. Thus the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense. The States have extremely wide latitude in determining the form that local government takes, and local preferences have led to a profusion of distinct forms. Among the many kinds of municipal corporations, political subdivisions, and special districts of all sorts, one may expect to find a rich variety of ways in which the power of government is distributed among a host of different officials and official bodies. Without attempting to canvass the numberless factual scenarios that may come to light in litigation, we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.[61]

Under *Propratnik*, state law directs the Court to the official or body that has the responsibility for making law or setting policy. In Louisiana that official is the Sheriff.

Second, a close reading of the Stipulated Order reveals the Compliance Director's authority is limited to implementing the Consent Judgment. For instance, the Stipulated Order provides "[t]he Compliance Director's authority will continue until the Court determines that . . . substantial compliance with the Consent Judgment is achieved."[62] Further, the Compliance Director's actions in implementing the Consent Judgment are

---

[60] *Oliver v. Gusman*, Civil Action No.: 18-7845, 2020 WL 1303493, at *8 (E.D. La. Mar. 19, 2020).
[61] 485 U.S. 112, 124-25 (5th Cir. 1988) (internal quotation marks and citations omitted).
[62] *See* R. Doc. 1082 at 3 filed in *Jones*.

subject to review of the Sheriff. For instance, the Stipulated Order provides the Compliance Director must "seek advice and/or approval from the Sheriff regarding all decisions that materially impact compliance with the Consent Judgment, unless doing so would cause unreasonable delay, and otherwise regularly inform the Sheriff regarding jail operations"[63] and directs the initial remedial plan to address deficiencies that led to noncompliance, created by the Compliance Director, "be approved by the Sheriff."[64] Thus, although it is true the Compliance Director is not subordinate to Sheriff Gusman, "the Compliance Director derives his authority from Sheriff Gusman or, to put it another way, the Stipulated Order acts as a delegation of authority to the Compliance Director."[65] As a result, under the Stipulated Order the Compliance Director's decisions are limited by the Consent Judgment and "subject to review" by the Sheriff.

Third, Defendants point to no case in which any court has ever held Sheriff Gusman was not the final policymaker for OPSO due to the appointment of the Compliance Director. In *Crawford v. Gusman*, a case cited by Defendants, the district court granted the Compliance Director's motion to dismiss the plaintiff's § 1983 claims on grounds of judicial immunity but found the plaintiff had stated a claim against Sheriff Gusman in his official capacity, which necessarily required finding he was the final policymaker.[66] The fact that Defendants are unable to point to any case supporting their position is unsurprising, as the Supreme Court has held that, "[i]f . . . a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose."[67] "This is

---

[63] *Id.* at 2-3.
[64] *Id.* at 5.
[65] *Oliver*, 2020 WL 1303493 at *8.
[66] No. 17-13397, 2018 WL 3773407, at *3-4 (E.D. La. Aug. 9, 2018).
[67] *Praprotnik*, 485 U.S. at 126.

particularly true here, where Sheriff Gusman has delegated his authority to control OPSO because of his failure to maintain constitutional conditions of confinement at OJC and to avoid a contempt order."[68] A recent decision rendered by Judge Barbier in *Oliver v. Gusman* reaches the same conclusion, rejecting Sheriff Gusman's argument that "despite his title, he was not the final policymaker at the time Plaintiff was attacked pursuant to a 'Stipulated Order for Appointment of Independent Jail Compliance Director' in *Jones v. Gusman*."[69]

Defendant's motion with respect to Plaintiff's § 1983 claim against Sheriff Gusman in his official capacity is denied.

## II.   Defendants' Request to Dismiss Plaintiff's § 1983 Claims Against Sheriff Gusman and Major Harris in Their Individual Capacities is Denied

Defendants primarily argue Plaintiff cannot maintain his § 1983 claims against Defendants in their individual capacities because Sheriff Gusman lacked final policymaking authority.[70] This argument has been dealt with above. Defendants alternatively argue Plaintiff has failed to sufficiently allege Defendants had knowledge of the substantial risk to inmate safety, which must be alleged in order to impose liability on an official in his or her individual capacity.

Plaintiff alleges Defendants violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."[71] This right extends to pretrial detainees through the due process clause of the Fourteenth

---

[68] *Oliver*, 2020 WL 1303493 at *8.
[69] *Id*. at *7.
[70] R. Doc. 25-1 at 17.
[71] *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

Amendment.[72] To establish a violation of this right, a detainee must show (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the prison official acted with "deliberate indifference to inmate health and safety."[73] To establish deliberate indifference a plaintiff must show a defendant had actual knowledge of a substantial risk to inmate health or safety.[74] Defendants contend Plaintiff fails to adequately plead deliberate indifference due to Plaintiff's inability show that either Sheriff Gusman or Major Harris "had any knowledge of[] any of the events alleged to have occurred before, during, or after the plaintiff's alleged attack."[75] Defendants do not challenge any other aspect of the sufficiency of Plaintiff's allegations on these claims.[76]

Defendants argue Plaintiff has not alleged they were *personally* involved in or had any knowledge of any of the events occurring before, during, or after the alleged attack on Plaintiff and, as a result, Plaintiff has not alleged they had knowledge of a substantial risk to inmate safety. Defendants also allege they cannot be held personally liable for the actions of others. Plaintiff concedes he has not alleged Defendants were personally involved in the attack or that they should be held liable under the doctrine of *respondeat superior*.[77] Rather, the complaint seeks to hold Defendants liable for their own actions in failing to adequately train, staff, and supervise employees, which exposed Plaintiff and

---

[72] *See Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996).

[73] *Williams*, 797 F.3d at 280 (quoting Farmer, 511 U.S. at 834).

[74] *Id.* at 281 (Plaintiff must show (1) the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official "must also draw the inference." (quoting *Farmer*, 511 U.S. at 837)).

[75] R. Doc. 25-1 at 15.

[76] Although Defendants contend plaintiff must show "that the defendant personally knew of and disregarded a risk of significant harm to this particular plaintiff," R. Doc. 25-1 at 7, the Supreme Court rejected this argument in *Farmer*, explaining that the question of whether Defendants had knowledge of the potential danger posed to Plaintiff specifically is irrelevant. *Farmer*, 511 U.S. at 842-44 ("[I]t would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.").

[77] R. Doc. 28 at 10-12 (arguing "[t]he defendants' failure to train, supervise, and properly staff the jail was a proximate cause of plaintiff's injuries, and plaintiff has sufficiently stated a cause of action against Sheriff Gusman and Major Harris in their personal capacities, and plaintiff need not allege defendants were present at the attack or had actual knowledge that the attack was imminent.").

other inmates to a substantial risk of serious harm.[78] Specifically, Plaintiff alleges Defendants can be held liable as supervisors for both a failure to promulgate policy and a failure to adequately train, supervise, and staff prison employees. An absence of allegations of personal involvement is not fatal. The Fifth Circuit has held "'[a] sheriff not personally involved in the acts that deprived the plaintiff of [her] constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'"[79]

As with other § 1983 claims for individual liability, "[l]iability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference" to violations of others' constitutional rights committed by their subordinates.[80] To establish deliberate indifference a plaintiff must show a defendant had knowledge of a substantial risk to inmate safety.[81] With respect to the deliberate indifference requirement, the Supreme Court explained in *Farmer v. Brennan* that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."[82] To illustrate this point, the *Farmer* court provided the following helpful example:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-

---

[78] R. Doc. 1 at ¶¶ 18, 21.
[79] *Cozzo v. Tangipahoa Parish Council-President Government,* 279 F.3d 273, 286 (5th Cir. 2002) (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001)).
[80] *Porter*, 659 F.3d at 446.
[81] *Williams,* 797 F.3d at 281 (quoting *Farmer*, 511 U.S. at 837).
[82] *Farmer*, 511 U.S. at 842.

documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'[83]

Accordingly, under *Farmer*, if a plaintiff alleges facts demonstrating a risk was obvious such that an official "must have known about it," then the plaintiff has alleged sufficient facts to show the official had knowledge of the risk.

In this case, Plaintiff alleges Defendants had "actual knowledge" that the inadequate training, staffing, and supervision created an obvious, substantial risk to inmate safety of "prisoner-on-prisoner violence," "as evidenced by the numerous violent incidents, lawsuits, publicity, independent monitor reports, and a federal consent decree that remains in effect addressing the safety and supervision of inmates."[84] In *Oliver v. Gusman*, the district court found similar allegations concerning the knowledge of the defendants-officials to be sufficient under *Twombly*'s pleading standard. In that case, the plaintiff alleged the Sheriff failed to adequately staff the jail and failed to train the staff at the jail to properly supervise inmates and report inmate-on-inmate violence; the warden failed to ensure that staff properly intervened to protect prisoners and failed to follow proper procedures for reporting inmate violence; other supervisors failed to train the staff adequately in the proper way to do investigations into staff misconduct and inmate-on-inmate violence; and the Department of Justice's ("DOJ's") findings letters regarding the constitutional violations leading to the need for the Consent Decree, as well as the monitor reports issued pursuant to the Stipulated Order, demonstrated the defendants "must have known" about the risk of prisoner-on-prisoner violence "because they would have been

---

[83] *Id*. at 842-44 (footnote and citations omitted).
[84] R. Doc. 1 at ¶ 17.

exposed to these documents in the course of their official duties."[85] The district court agreed that, because "the issues [creating a substantial risk to inmate safety were] repeatedly highlighted by the DOJ and the Jail Monitor," the risk to inmate safety was obvious and thus the defendants-officials "must have known" of the substantial risk to inmate safety.[86]

By pointing to the existence of the Consent Decree, the monitor reports issued pursuant to the Stipulated Order, and the longstanding history of similar violent incidents, Plaintiff in this case has alleged sufficient facts to show "a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant[s]-official[s] being sued had been exposed to information concerning the risk [to inmate safety] and thus 'must have known' about it."[87] Such facts, if true, "could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk [to inmate safety]."[88] As a result, Defendant's request for judgment on the pleadings with respect to Plaintiff's § 1983 claims against them in their individual capacities is denied.

### III. Defendants are Not Entitled to Qualified Immunity at This Stage in the Proceedings

Defendants argue they are entitled to qualified immunity and, as a result, the Court should dismiss Plaintiff's § 1983 claims against them in their individual capacities.[89] Defendants primarily argue they are entitled to qualified immunity because "the plaintiff in the instant matter is unable to cast responsibility upon Sheriff Gusman as making inadequate policies, hiring incompetent staff, failing to take steps to implement

---

[85] *Oliver,* 2020 WL 1303493 at *4.
[86] *Id.* at *4-5.
[87] *Farmer*, 511 U.S. 842-43 (internal quotations marks and citation omitted).
[88] *Id.* (internal quotations marks and citation omitted).
[89] R. Doc. 25-1 at 18.

procedural safeguards, or being indifferent to the plaintiff's safety" because "the plaintiff is required to cognizably show that Sheriff Gusman or Major Harris implemented and maintained a policy so deficient that it led to the violation complained of" and "[o]n all dates and times referenced in the Complaint, it was the Compliance Director who was in control of all such policy implementation decisions."[90] In effect, Defendants rehash the argument Sheriff Gusman was not the final policymaker. The Court has found this argument to be without merit. Defendants alternatively argue they are entitled to qualified immunity because "plaintiff simply has not pled any action of either defendant which, if taken as true, is objectively unreasonable in light of clearly established law."[91]

When a qualified immunity defense is presented for consideration on a Rule 12 motion, the Court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[92] To overcome qualified immunity, the plaintiff must establish (1) the allegations in the complaint show the defendant's conduct violated the plaintiff's constitutional rights and (2) the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident.[93] Because Defendants argue only that "plaintiff simply has not pled any action of either defendant which, if taken as true, is objectively unreasonable in light of clearly established law,"[94] only the second prong is at issue. The second prong involves two inquiries: "whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law."[95] A right is clearly

---

[90] *Id.* at 20-21.
[91] *Id.* at 8.
[92] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (internal quotation marks and citation omitted).
[93] *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).
[94] R. Doc. 25-1 at 8.
[95] *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

established if "case precedent . . . is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law."[96]

It is clearly established under Fifth Circuit precedent that, under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."[97]  Accordingly, the key question to be determined by the Court under the second prong is whether Defendants' conduct was objectively reasonable in light of this clearly established law.

The "objective unreasonableness inquiry" calls for a determination of what a reasonable officer could have believed regarding the legality of his action, under the specific circumstances alleged.[98] The doctrine of qualified immunity will not protect "the plainly incompetent or those who knowingly violate the law."[99] In *Oliver*, discussed above, the plaintiff argued the defendants-officials' failure to properly train and supervise employees to protect against prisoner-on-prisoner violence was objectively unreasonable because the "DOJ's findings letters" and "the Jail Monitor's reports," showed "that a substantial risk of inmate attacks was longstanding, pervasive, and well-documented."[100] The district court agreed, explaining:

> [The] Defendants' conduct was objectively unreasonable in light of . . . the repeated warnings from the DOJ and the Jail Monitor.
> . . .
> Plaintiff has alleged that the Moving Defendants knew of a substantial risk of serious harm to inmates in their custody from assaults by other inmates that officers would be unlikely to prevent because a pattern of similar incidents had been ongoing for several years before Plaintiff was attacked. Thus, their failure to correct policies known to cause constitutional violations or to implement new policies is objectively unreasonable,

---

[96] *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

[97] *Williams*, 797 F.3d at 280 (citations omitted); *see also Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832-33).

[98] *See Strickland v. City of Crenshaw, Miss.*, 114 F.Supp.3d 400, 413 (N.D. Miss. 2015).

[99] *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).

[100] *Oliver*, 2020 WL 1303493 at *4 (internal quotation marks and brackets omitted).

regardless of whether the Moving Defendants knew that Plaintiff specifically was at risk.[101]

Likewise, in this case, Plaintiff has alleged that, due to the existence of the Consent Decree, the monitor reports issued as a result of the Stipulated Order, and the longstanding history of similar violent incidents, Defendants must have known a risk of inmate attacks was substantial. Accepting Plaintiff's allegations as true, which the Court must do on a Rule 12(c) motion,[102] any reasonable official in Defendants' positions would have known of the obvious, substantial risk to inmate safety and, as a result, Defendants' failure to correct the inadequate training, supervision, and staffing known to cause the constitutional violations was objectively unreasonable. Plaintiff has alleged facts which, if true, would defeat qualified immunity.

## **CONCLUSION**

**IT IS ORDERED** that the Motion for Partial Judgment on the Pleadings Pursuant to Rule 12(c) is **DENIED**.

New Orleans, Louisiana, this 10th day of June, 2020.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[101] *Id.* at *6 (citing *Farmer*, 511 U.S. at 843-44).
[102] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).